1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                            **DISTRICT OF NEVADA**

8

9   RALPH MIGUEL GONZALES,

10              Petitioner,                    3:02-cv-0665-ECR-RAM

11  vs.
                                              **ORDER**
12  E.K. McDANIEL, *et al.*,

13              Respondents.

14  _____/

15

16  Introduction and Background

17          This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

18  The petitioner, Ralph Miguel Gonzales, was convicted, upon a jury verdict, in Nevada's Eighth

19  Judicial District Court, in Clark County, of four counts of driving under the influence and causing

20  substantial bodily injury or death, in violation of NRS 484.3795.

21          Gonzales' conviction stemmed from a tragic automobile collision on Interstate 15, in

22  Las Vegas, on New Year's Eve 1995.  The Nevada Supreme Court described the events as follows:

23          Appellant Ralph Miguel Gonzales ("Gonzales"), lost control of his
            white BMW automobile on Interstate Highway 15 and collided with a
24          Chevrolet Blazer owned by Desert Cab Company.  The collision caused the
            Blazer to overturn and eject its three passengers.  Two of the persons involved
25          in the accident were severely injured and a third was killed.  The driver of the
            Blazer sustained minor injuries.
26

1                        Gonzales failed a field sobriety test, and subsequent chemical testing
      revealed a blood alcohol level of .13.

2

3    Order Dismissing Appeal, Exhibit 48, p. 1. [1]

4             The judgment of conviction was entered on October 8, 1996.  Exhibit 25.  Gonzales

5    was sentenced to serve consecutive prison terms totaling approximately twenty-eight to seventy-one

6    years. *Id*.

7             Gonzales appealed to the Nevada Supreme Court.  That court dismissed the appeal on

8    December 8, 1998.  Exhibit 48.  After denying a petition for rehearing, and staying the remittitur

9    pending an application to the United States Supreme Court for a writ of certiorari, the Nevada

10   Supreme Court issued its remittitur on May 20, 1999.  Exhibit 54.

11            On May 19, 2000, Gonzales mailed to the state district court a petition for writ of

12   habeas corpus, and other documents, initiating a state-court habeas action.  Exhibits 55, 56, 57.

13   The state district court received the petition on May 23, 2000, and filed it on May 24, 2000.  *See*

14   Exhibit 57, 58.  The state habeas action was denominated Case Number 96-C-133691.  The state

15   district court denied the petition on October 6, 2000, ruling that it was barred by the applicable

16   statute of limitations.  Exhibit 62.  Gonzales appealed.  Exhibit 63.  The Nevada Supreme Court

17   affirmed on September 13, 2002.  Exhibit 87 (published as *Gonzales v. State*, 118 Nev. 590, 53 P.3d

18   901 (Nev. 2002)).[2]  In its holding, the Nevada Supreme Court declined to extend the prison mailbox

19   rule to the filing of *pro se* post conviction habeas petitions in Nevada state courts.  *See Gonzales,*

20   118 Nev. at 595; 53 P.3d at 904.  On November 1, 2002, the Nevada Supreme Court denied

21   Gonzales' petition for rehearing.

22

23

24         [1]   Unless otherwise indicated, the exhibits referred to in this order are those exhibits filed by
petitioner in support of his first amended habeas petition and located in the record at docket #25, #26,

25   #27, and #28 in file number 3:00-cv-00070-ECR-RAM.

26         [2]   Exhibit 87 was filed by respondents, with the motion to dismiss filed May 9, 2003; the motion
to dismiss and Exhibit 87 are found at docket #8 in file number 3:02-cv-0665-ECR-RAM.

1       Meanwhile, on February 4, 2000, this court received from Gonzales a petition for writ

2   of habeas corpus, initiating this federal habeas corpus action.  The action was denominated

3   Case Number 3:00-cv-00070-ECR-RAM.[3]  Counsel was appointed for Gonzales, and he  filed an

4   amended habeas petition on July 31, 2001.  *See* First Amended Petition, docket #23 in filed number

5   3:00-cv-00070-ECR-RAM.  On October 5, 2001, respondents moved to dismiss, arguing that

6   Gonzales had not exhausted his state-court remedies with respect to several of his claims.

7   *See* Motion to Dismiss, docket #33 in file number 3:00-cv-00070-ECR-RAM.  On

8   May 16, 2002, the court granted the motion to dismiss.  Order, docket #40 in file number

9   3:00-cv-00070-ECR-RAM.  The court dismissed the action without prejudice, and without entering

10  judgment, and instructed that Gonzales could move to reopen the case after fully exhausting his

11  claims in state court.  *Id*.

12      On November 18, 2002, after the Nevada Supreme Court affirmed the denial of his

13  state habeas action, Gonzales filed a motion requesting that his federal habeas action be reopened,

14  and seeking leave of court to file a second amended habeas petition.  Motion to Reopen Case and

15  Request to File Second Amended Petition, docket #42 in file number 3:00-cv-00070-ECR-RAM.

16  On December 20, 2002, the court granted that motion and reopened the case.  Order, docket #44

17  in file number 3:00-cv-00070-ECR-RAM.  The court ordered that, for the court's administrative

18  purposes, a new file would be opened for the case, and the case would be given a new case number:

19  3:02-cv-0665-ECR-RAM. [4]   The court ordered, however, that, for all purposes other than the court's

20  administrative purposes, Case Number 3:02-cv-0665-ECR-RAM shall be considered a continuation

21  of Case Number 3:00-cv-00070-ECR-RAM.

22

23

24  _____

25      [3]  Under the court's case numbering system at the time, the case number was formatted as
    follows:  CV-N-00-0070-ECR(RAM).

26      [4]  Under the court's case numbering system at the time, the new case number was formatted as
    follows:  CV-N-02-0665-ECR(RAM).

1      Gonzales then filed his second amended petition for writ of habeas corpus on

2  February 14, 2003 (docket #2).[5]  The second amended petition includes eight grounds for relief.

3  Ground 7 includes two subparts (7a and 7b); Ground 8 includes seven subparts (8a, 8b, 8c, 8d, 8e,

4  8f, and 8g).

5      On May 9, 2003, respondents filed a motion to dismiss (docket #8), arguing that

6  certain of the claims in the second amended petition are unexhausted in state court and that certain of

7  the claims in the second amended petition are procedurally defaulted.

8      On March 11, 2004, the court granted the motion to dismiss in part and denied it in

9  part.  Order entered March 11, 2004 (docket #15).  The court found the following claims to be

10  unexhausted: Grounds 1, 4, 6, 7a, 7b, 8a, 8b, 8c, 8f, and 8g.  *See id*.  The court found Grounds 2, 3,

11  5, 8d, and 8e to be neither unexhausted nor procedurally defaulted.  *See id*.  The court noted that

12  Gonzales took the position that it would be futile for him to return to state court, as multiple state

13  procedural rules would bar him, and he has no colorable means of overcoming the effect of those

14  rules.  *See id*., pp. 12-13.  The court, therefore, ordered Gonzales to elect to either abandon his

15  unexhausted claims or suffer dismissal of the entire action pursuant to *Rose v. Lundy*, 455 U.S. 509

16  (1982).

17      On May 12, 2004, Gonzales filed a notice (docket #18), informing the court that he

18  declined to abandon the claims found to be unexhausted, preferring to suffer dismissal and pursue an

19  appeal.  Therefore, on June 9, 2004, the court entered an order (docket #19), dismissing the action.

20  Judgment was entered the same day (docket #20).

21      Gonzales appealed (docket #21).  On August 19, 2005, the court of appeals reversed

22  and remanded, ruling as follows:

23          Because any petition Gonzales filed in state court would be futile and
           because Gonzales has no state forum through which his claims can be heard
24          on their merits, the exhaustion doctrine does not bar his claims.  *See Phillips
           v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (finding claim exhausted

25

26      _____

       [5] Unless otherwise indicated, documents identified only by docket number are documents filed
   in file number 3:02-cv-0665-ECR-RAM.

where return to state court would be futile); *Insyxiengmay v. Morgan*, 403 F.3d 657, 667 (9th Cir. 2005) (concluding that exhaustion requirement satisfied where no state remedy available).  Further, a retroactively applied new procedural rule may not be used to find procedural default.  *See Ford v. Georgia*, 498 U.S. 411, 425 (1991) (holding that new "rule, adopted long after petitioner's trial, cannot bar federal judicial review of petitioner's equal protection claim").  Because the new procedural rule retroactively employed to bar Gonzales's claim is not an adequate independent state ground, federal review of his petition is appropriate.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Memorandum Order (docket #30), pp. 2-3.

After the remand, respondents filed an answer (docket #38), and Gonzales filed a reply (docket #42).

Procedural Default

Respondents assert in their answer that Grounds 1, 4, 6, 7a, 7b, 8a, 8b, 8c, 8f, and 8g of Gonzales' second amended petition are barred by the procedural default doctrine.  *See* Answer (docket #38), pp. 16-17; *see also Coleman v. Thompson*, 501 U.S. 722 (1991); *Murray v. Carrier*, 477 U.S. 478 (1986).

Respondents' procedural default defense is foreclosed by the ruling of the Ninth Circuit Court of Appeals.  *See* Memorandum Order (docket #30), pp. 2-3.  In its ruling, the court of appeals concluded:

Because the new procedural rule retroactively employed to bar Gonzales's claim is not an adequate independent state ground, federal review of his petition is appropriate.

*Id*. at 3.  This ruling by the court of appeals is the law of the case in this action.  Under the law of the case doctrine, a court is generally precluded from reconsidering an issue previously decided by a higher court in the same case.  *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990).

Therefore, respondents' procedural default argument is rejected.  The court considers the merits of each of petitioner's claims.

1    <u>Habeas Corpus Standards</u>

2        28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

3    (AEDPA), provides the standards applicable to the habeas corpus petition in this case:

4        An application for a writ of habeas corpus on behalf of a
         person in custody pursuant to the judgment of a State court shall not be
5        granted with respect to any claim that was adjudicated on the merits in
         State court proceedings unless the adjudication of the claim --

6
         (1)  resulted in a decision that was contrary to, or involved an
7        unreasonable application of, clearly established Federal law, as
         determined by the Supreme Court of the United States; or

8
         (2)  resulted in a decision that was based on an unreasonable
9        determination of the facts in light of the evidence presented in the
         State court proceeding.

10

11   28 U.S.C. § 2254(d).

12        A state court decision is contrary to clearly established Supreme Court precedent,

13   within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the

14   governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts

15   that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

16   at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73

17   (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S.

18   685, 694 (2002)).

19        A state court decision is an unreasonable application of clearly established Supreme

20   Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

21   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

22   principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*,

23   529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

24   than incorrect or erroneous; the state court's application of clearly established law must be

25   objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

26

6

1   The analysis under 28 U.S.C. § 2254(d) looks to the law that was clearly established

2   by United States Supreme Court precedents at the time of the state court's decision.  *Wiggins v.*

3   *Smith*, 539 U.S. 510, 520 (2003).

4   With respect to pure questions of fact, "a determination of a factual issue

5   made by a State court shall be presumed to be correct," and the petitioner "shall have the burden

6   of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C.

7   § 2254(e)(1).

8   With respect to claims not decided by the state courts, there is no deference under the

9   AEDPA, as there is no state-court ruling to be accorded deference.  This court resolves such claims

10  de novo.  *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Reynoso v. Giurbino,* 462 F.3d 1099, 1109

11  (9th Cir.2006); *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir.2002).

12  <u>Analysis of the Merits of Petitioner's Claims</u>

13  <u>Ground 1</u>

14  In Ground 1 of his second amended petition, Gonzales claims that he was denied due

15  process of law, in violation of the Fifth and Fourteenth Amendments to the United States

16  Constitution, because there was no proof of mens rea, and because the trial court gave no jury

17  instruction requiring a finding of mens rea.  Second Amended Petition (docket #2), pp. 8-9.

18  Gonzales' trial counsel requested a jury instruction that would have required a finding

19  that Gonzales acted with criminal negligence before a guilty verdict could be rendered.

20  *See* Exhibit 42, p. 32.  Gonzales also filed a pretrial habeas petition making a similar argument.

21  *See* Exhibit 9.  The trial court, however, did not give the proposed instruction.  Instead, the jury was

22  given an instruction regarding criminal intent.  *See* Exhibit 23, Instruction 16.

23  Gonzales argues:

24  The State of Nevada's statutory scheme demands every crime contain
    a mens rea requirement of, at a minimum, criminal negligence. to wit, Nevada

25  Revised Statute 193.190 provides: "In every crime or public offense there
    must exist a union, or joint operation of act and intention, or criminal

26  negligence."

7

1    Second Amended Petition, p. 8, ¶ 2.   Gonzales argues that when construed in conjunction with

2    NRS 193.190, NRS 484.3795, under which he was convicted, must be read to include a criminal

3    negligence element.

4            The Nevada Supreme Court addressed this claim on Gonzales' direct appeal, and

5    rejected it, ruling as follows:

6            Gonzales contends that NRS 484.3795 requires the state to prove that
         he acted with "criminal" negligence.  We will not go beyond the face of a
7        statute to lend it a construction contrary to its clear meaning, *see Union Plaza
         Hotel v. Jackson*, 101 Nev. 733, 736, 709 P.2d 1020, 1022 (1985), or to imply
8        provisions not expressly included in the legislative scheme.  *See SIIS v.
         Wrenn*, 104 Nev. 536, 539, 762 P.2d 884, 886 (1988).
9
             In light of the above, we conclude the clear meaning of NRS 484.3795
10       does not require the state to prove criminal negligence, but only that Gonzales
         neglected a duty that proximately caused the death of, or substantial bodily
11       injury to, other individuals. [Citations omitted.]  Under this statutory
         framework, the "criminal" agency is the impairment caused by the ingestion of
12       alcohol.

13   Order Dismissing Appeal, Exhibit 48, pp. 6-7.

14           A state court's interpretation of state law is binding upon a federal court in a federal

15   habeas corpus action.  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62,

16   67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  The Nevada Supreme Court held that

17   NRS 484.3795 does not include a criminal negligence element; that ruling is beyond the purview of

18   this court.

19           In his reply, Gonzales argues that the Nevada courts' power, with regard to the

20   construction of Nevada statutes, is not absolute, and he cites the case of *Goldyn v. Hayes*, 444 F.3d

21   1062 (9th Cir.2006), for that proposition.  That case, however, does not affect this court's analysis;

22   under the AEDPA, this court reviews the Nevada Supreme Court's decision in light of federal law,

23   clearly determined by the United States Supreme Court.  Gonzales does not cite any United States

24   Supreme Court authority to support his argument that this court should look past the Nevada

25   Supreme Court's construction of NRS 484.3795.

26

                                             8

1    The Nevada Supreme Court's ruling on this claim was not contrary to, or an

2 unreasonable application of, clearly established federal law, as determined by the Supreme Court of

3 the United States.  *See* 28 U.S.C. § 2254(d).  The court will deny habeas corpus relief with respect to

4 Ground 1.

5        Ground 2

6    In Ground 2, Gonzales claims that his Fourteenth Amendment rights to due process of

7 law and a fair trial were violated when photographs of the victims were admitted at his trial.  Second

8 Amended Petition, pp. 9-10.  Gonzales acknowledges that death or substantial bodily harm is an

9 element of the crimes charged in his case, but he argues that admission of the photographs was

10 unnecessary because he offered to stipulate to that element of the charged crimes.  *Id*. at 9.  Gonzales

11 argues: "Given Gonzales' offer to stipulate, this evidence had little if any probative value, was

12 unnecessary to narrative integrity, and was undoubtedly inflammatory and highly prejudicial."  *Id*.

13 at 9-10.

14    The Nevada Supreme Court ruled as follows on this claim:

15        Gonzales offered to stipulate that, per NRS 484.3795, the accident
     resulted in substantial bodily injuries and death.  The state refused to accept
16   his stipulation and presented evidence of the various fatal and non-fatal
     injuries sustained by the victims.  Citing *Old Chief v. United States*, 519 U.S.
17   172 (1997), Gonzales contends the district court erred in refusing to require
     the state to accept his stipulation.
18
         We conclude *Old Chief* does not control the instant case because,
19   unlike 18 U.S.C.S. § 922(g)(1) at issue in *Old Chief*, NRS 484.3795 does not
     require proof of a prior conviction.  Here, satisfaction of the substantial bodily
20   injury element of NRS 484.3795 does not entail proof of a past bad act that
     might lure the jury into a sequence of bad character reasoning.  *See Old Chief*,
21   519 U.S. at 180-81, 185.  Further, a defendant may not circumvent the
     evidentiary force of the prosecution's case by means of stipulation where the
22   prosecution offers evidence to prove something other than the defendant's
     legal status.  *See id*. at 186-90 (citing *Parr v. United States*, 358 U.S. 824
23   (1958)).

24 Order Dismissing Appeal, Exhibit 48, pp. 2-3.

25    This court concurs with the analysis of the Nevada Supreme Court.

26

                                    9

1    To the extent that Gonzales complains that the Nevada courts misapplied Nevada

2  evidentiary rules, his claim is not cognizable in this federal habeas corpus action.  Questions

3  regarding the admissibility of evidence are primarily questions of state law, not subject to challenge

4  in a federal habeas corpus action.  A writ of habeas corpus is available under 28 U.S.C. § 2254 only

5  on the basis of a transgression of federal law binding on the state courts; the writ is unavailable for

6  alleged error in the interpretation or application of state law.  *See Engle v. Isaac*, 456 U.S. 107, 119

7  (1982); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991); *Middleton v. Cupp*, 768 F.2d

8  1083, 1085 (9th Cir.1985), *cert. denied*, 478 U.S. 1021 (1986).

9    Similarly, Gonzales' argument is without merit to the extent that he focuses upon

10  federal evidentiary law, and, in particular, Fed. R. Evid. 403.  Federal evidentiary law was

11  inapplicable at Gonzales' trial.

12    The only issue before this court is whether the admission of the photographs of the

13  victims violated Gonzales' federal constitutional rights.  Gonzales has not cited any Supreme Court

14  authority supporting his claim that his federal constitutional rights were violated by admission of the

15  photographs.  The United States Supreme Court decision primarily relied upon by Gonzales,

16  *Old Chief v. United States*, 519 U.S. 172 (1997), involved Federal Rule of Evidence 403.  *Old Chief*

17  did not involve a federal constitutional challenge to the evidence at issue in that case.

18    Furthermore, the evidence at issue in *Old Chief* was of a completely different sort

19  than that at issue in this case.  Here, the evidence at issue consists of photographs of injuries

20  allegedly caused by Gonzales.  In *Old Chief,* the evidence at issue was proof of a prior conviction.

21  The sort of confusion and prejudice that could have resulted from the evidence at issue in *Old Chief*

22  was not a risk posed by the photographs of the injuries in this case.

23    The photographs at issue in this case actually went to the core of this case:  the death

24  and injury that, according to the prosecution, resulted from Gonzales' unlawful acts.  The court does

25  not doubt that the photographs were disturbing, given the nature of the events that are the subject of

26  this case.  However, as the Court in *Old Chief* pointed out, it is well accepted that "a criminal

1  defendant may not stipulate or admit his way out of the full evidentiary force of the case as the

2  Government chooses to present it." *Old Chief*, 519 U.S. at 186-87.

3         Gonzales has made no showing at all that the Nevada Supreme Court's ruling on this

4  claim was contrary to, or an unreasonable application of, clearly established federal law, as

5  determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).  The court will

6  deny habeas corpus relief with respect to Ground 2.

7         Ground 3

8         In Ground 3, Gonzales claims that, in the presence of the jury, the trial judge

9  expressed disdain for, and bias against, a defense witness, violating Gonzales' right to a fair trial as

10  guaranteed by the Fifth, Sixth, and Fourteenth Amendments.  Second Amended Petition, pp. 10-11.

11  Gonzales points to an exchange in which the trial judge admonished the witness that he must answer

12  questions on cross-examination in a responsive manner.  *See* Exhibit 78, pp. 951-54.  The judge

13  requested defense counsel to spend time with the witness, and suggested that the witness' testimony

14  might be stricken.  *See id*.

15         On Gonzales' direct appeal, the Nevada Supreme Court addressed this issue:

16              Gonzales contends the district court's hostile treatment of William
              Morrison, Gonzales' expert witness, prejudiced the jury.  A judge's
17              impartiality is a question of law, and this court will exercise its independent
              judgment of the undisputed facts.  *See PETA v. Bobby Berosini, Ltd.*, 111
18              Nev. 431, 438 894 P.2d 337, 341 (1995).  We conclude the trial court's
              conduct did not unduly influence the jury and, at worst, was harmless error.

19

20  Order Dismissing Appeal, Exhibit 48, p. 5.

21         The question presented in this federal court, with respect to this issue, is whether any

22  inappropriate conduct on the part of the trial judge rendered Gonzales' trial fundamentally unfair.

23  *See Duckett v. Godinez* 67 F.3d 734 (9th Cir.1995).  The Due Process Clause of the United States

24  Constitution guarantees a criminal defendant the right to a fair and impartial judge.  *See*, *e.g.*,

25  *In re Murchison*, 349 U.S. 133, 136 (1955).  However, to succeed on a claim of judicial bias, a

26  federal habeas petitioner must "overcome a presumption of honesty and integrity in those serving as

1    adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Federal habeas relief on a claim that a

2    state trial judge was so prejudiced as to violate the petitioner's federal constitutional right to due

3    process requires the petitioner to establish that the judge's behavior rendered the trial fundamentally

4    unfair.  *Duckett*, 67 F.3d at 740.

5           The comments of the trial judge complained of by Gonzales do not approach the

6    threshold of a constitutional violation.  When viewed in the context of the entire testimony of

7    William Morrison, and, indeed in the context of the entire trial, the trial judge's handling of

8    Morrison's testimony did not render Gonzales' trial unfair.

9           The Nevada Supreme Court's ruling on this claim was not contrary to, or an

10   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

11   the United States.  *See* 28 U.S.C. § 2254(d).  The court will deny habeas corpus relief with respect to

12   Ground 3.

13          Ground 4

14          In Ground 4, Gonzales claims that he was denied his right to a fair trial, as guaranteed

15   by the Fifth, Sixth, and Fourteenth Amendments, because the trial court's instructions to the jury on

16   the subject of proximate cause and contributory negligence were confusing and inaccurate.  Second

17   Amended Petition, pp. 11-13.  Gonzales argues that the instructions were confusing because they did

18   not define the phrase "efficient intervening cause."  *Id*.  Gonzales argues that the instructions were

19   inaccurate because they included an incorrect statement regarding contributory negligence.  *Id*.

20   Gonzales argues that the erroneous jury instructions relieved the prosecution of its burden of proving

21   proximate cause, an element of the charged crimes.

22          The jury instructions at issue in this claim stated:

23

24          Instruction No. 11

25                Proximate cause is that cause which in a natural and continuous
        sequence, unbroken by any efficient intervening cause, produces the injury
        and without which the injury would not have occurred.  It is the efficient

26      cause, the one that necessarily sets in operation the factors that accomplish the
        injury.

1          Instruction No. 12

2               The contributory negligence of another does not exonerate the
           defendant unless the other's negligence was the sole cause of injury.
3

4     Exhibit 23, Instructions 11 and 12.

5               The Nevada Supreme Court did not addressed this claim in Gonzales' case.  Because

6     there is no state-court ruling on this claim, there is no deference under the AEDPA.  Accordingly,

7     this court resolves Ground 4 de novo.  *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Reynoso v.*

8     *Giurbino,* 462 F.3d 1099, 1109 (9th Cir.2006); *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68

9     (9th Cir.2002).

10              The court turns first to *Williams v. State*, 118 Nev. 536, 50 P.3d 1116 (2002), another

11    case involving a DUI resulting in death, in which the Nevada Supreme Court ruled on a nearly

12    identical claim.  The Nevada Supreme Court ruled as follows in that case:

13              Williams claims that the trial court erred in excluding evidence of the
          county's purported negligence because that decision improperly shifted the
14        burden of proof to the defense on the issue of proximate cause. We disagree.

15              The State's motion in limine to exclude this evidence was granted on
          the basis that any purported negligence by a third party would not exculpate
16        Williams if she was found to be a proximate cause of the deaths.  Proximate
          cause was defined in Jury Instruction No. 15, which stated:
17
18              "Proximate Cause" is that cause which is natural
          and a continuous sequence, unbroken by any other
19        intervening causes, that produces the injury and without
          which the injury would not have occurred.

20              A proximate cause of an injury can be said to be
          that which necessarily sets in operation the factors that
21        accomplish the injury.

22              The contributory negligence of another does not
          exonerate the defendant unless the other's negligence
23        was the sole cause of injury.

24              We have previously held that a similar instruction "was an accurate
          statement of Nevada law" because an intervening cause must be a
25        "superseding cause" or the "sole cause" in order to completely excuse the
          prior act. [Footnote: *Etcheverry v. State*, 107 Nev. 782, 785, 821 P.2d 350,
26        351 (1991).]  We conclude that the instruction given in this case was also
          proper.

                                        13

*Williams*, 118 Nev. at 550.   A state court's interpretation of state law is binding upon a federal court in a federal habeas corpus action.  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  The salient point to be drawn from *Williams* is that, under Nevada law, contributory negligence breaks the chain of proximate cause, such that a defendant is absolved of criminal liability, only if the contributory negligence can be said to be the "sole cause of the injury."  *See Williams*, 118 Nev. at 550.

The proximate cause and contributory negligence instructions given in this case were nearly identical to the instructions approved in *Williams*.  In light of *Williams*, this court concludes that the instructions given in this case were not inaccurate.  The instructions in this case accurately conveyed the substance of Nevada law on the subject of proximate causation and contributory negligence in the criminal law context.

The addition of the undefined word "effective" to modify the phrase "intervening causes" in the instructions, as given in this case, did not make any meaningful change to the instructions.  The general meaning of effective – capable of producing a result – added nothing to the concept of an intervening cause.  While the addition of the word "effective" may have added unnecessary verbiage to the instructions, it did not undermine their meaning.

Moreover, the instructions given in this case were actually marginally clearer than the instructions given in *Williams* (if the published version of *Williams* accurately sets forth the instructions given in that case).  The instructions in *Williams* began: "'Proximate Cause' is that cause which *is* natural and a continuous sequence ...."  *See Williams*, 118 Nev. at 550 (emphasis added).  It appears there was a typographical error.  The instruction likely should have begun – as it did in this case – as follows:  "'Proximate Cause' is that cause which *in a* natural and a continuous sequence ...."  *See* Exhibit 23, Instruction 11.   While the correction makes no substantive difference, it is notable that the instructions given in this case more clearly conveyed the essence of Nevada law to the jury than did the instructions evidently given in the *Williams* case*.*

1    The court now turns to Gonzales' argument that his federal constitutional rights were

2 violated because he was denied the opportunity to present a defense as a result of the proximate

3 cause and contributory negligence instructions given at his trial.  Gonzales argues:

4          The State is correct in noting mere instructional error is not sufficient
          evidence for habeas relief.  The error at issue rises above this level of legal
5          error.  The proximate cause instruction at issue deprived Gonzales of the
          ability to argue a theory of defense.  This constitutes constitutional error of the
6          first magnitude.  *See, e.g.*, *Washington v. Texas*, 388 U.S. 14, 19 (1967)
          (finding the right to present a defense is applicable to the States, and rests on
7          the premises that it "is a fundamental element of due process of law").

8 Petitioner's Reply (docket #42), p. 16, lines 1-6.

9    Gonzales' argument in this regard fails, primarily because, as is discussed above,

10 under *Williams*, the instructions given at his trial were not erroneous.  There was no instructional

11 error.

12    Moreover, there is no indication in the record that Gonzales was prevented from

13 pursuing a defense based on the proximate cause element of the charged crimes.  On the contrary,

14 Gonzales did in fact pursue a defense concerning the proximate cause issue.  *See, e.g.*,

15 Exhibit 79, pp. 1092, 1127.  However, the focus of the defense was on the manner in which the

16 collision occurred; the defense did not focus to any significant extent on the victims' failure to wear

17 seatbelts and the propensity of the victims' vehicle to roll over.  It appears that, in this regard, the

18 focus of the defense was a matter of defense strategy.  There is no indication that the defense was

19 limited by the jury instructions given by the trial court.

20    The court concludes that there is no showing that the trial court inaccurately

21 instructed the jury regarding proximate cause or contributory negligence and thereby prevented

22 Gonzales from presenting a defense, in violation of his federal constitutional rights.  The court will

23 deny habeas corpus relief with respect to Ground 4.

24

25

26

15

1       Ground 5

2               In Ground 5, Gonzales claims that his sentence violates the Eighth Amendment

3    proscription against cruel and unusual punishment because it is grossly disproportionate and because

4    it imposes consecutive sentences for a single criminal act.  Second Amended Petition, pp. 15-16.

5               Gonzales was convicted of four counts of driving under the influence of intoxicating

6    liquor, in violation of NRS 484.3795.  Each count was for one of the four victims killed or injured in

7    the automobile collision on December 31, 1995.  Gonzales was sentenced as follows:

8               Count 1       -       96 to 240 months in prison;

9               Count 2       -       76 to 190 months in prison, consecutive to the
                                      term to be served for Count 1;
10
11              Count 3       -       76 to 190 months in prison, consecutive to the
                                      term to be served for Count 2;

12              Count 4       -       96 to 240 months in prison, consecutive to the
                                      term to be served for Count 3.
13

14   Judgment of Conviction, Exhibit 25, p. 2.   All together, Gonzales was sentenced to a total of 344 to

15   860 months (28.7 to 71.7 years) in prison.

16              The Nevada Supreme Court rejected Gonzales' Eighth Amendment challenge to his

17   sentence, ruling as follows:

18              Gonzales contends that his total sentence of seventy-one years eight
                months violates the Eighth Amendment of the United States Constitution
19              because (1) the accident, as a single incident and the result of a single traffic
                violation, does not warrant consecutive sentences, and (2) the sentences are
20              disproportionate to the crime.

21              We conclude Gonzales' sentence does not violate the Eighth
                Amendment:
22
                a.   The district court properly sentenced Gonzales consecutively (see
23              Galvan v. State, 98 Nev. 550, 555, 655 P.2d 155, 157-58 (1982));

24              b.   The sentence is not grossly disproportionate to the crime (see
                Harmelin v. Michigan, 501 U.S. 957, 998-1001 (1991));
25

26

16

1
         c.   The sentence is within the statutory limits of NRS 484.3795 and is

2
not the product of the district court's reliance upon impalpable or highly suspect evidence.  *See Etcheverry v. State*, 107 Nev. 782, 786, 821 P.2d 350, 352 (1991).

3

4
Order Dismissing Appeal, Exhibit 48, p. 3.

5
      A criminal sentence that is not proportionate to the crime for which the defendant was

6
convicted violates the Eighth Amendment.  *Solem v. Helm*, 463 U.S. 277, 303 (1983) (sentence of

7
life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth

8
Amendment).  But "outside the context of capital punishment, successful challenges to the

9
proportionality of particular sentences will be exceedingly rare."  *Id*. at 289-90.  For purposes of

10
federal habeas review, under 28 U.S.C. § 2254(d)(1), it is clearly established that "[a] gross

11
proportionality principle is applicable to sentences for terms of years."  *Lockyer v. Andrade*, 538

12
U.S. 63, 72 (2003).  However, "[t]he Eighth Amendment does not require strict proportionality

13
between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly

14
disproportionate' to the crime."  *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (Kennedy, J.,

15
concurring).  Thus, the federal proportionality analysis comes into play "only in the rare case in

16
which a threshold comparison of the crime committed and the sentence imposed leads to an

17
inference of gross disproportionality."  *Harmelin*, 501 U.S. at 1005.  Only if such an inference arises

18
does the court proceed to compare the petitioner's sentence with sentences in the same and other

19
jurisdictions.  *See id*. at 1004-05.

20
      The Nevada Supreme Court's ruling – that Gonzales' sentence is not grossly

21
disproportionate to his crimes – was not an unreasonable application of *Harmelin* or *Solem*, or any

22
other United States Supreme Court precedent.  Gonzales drove on a freeway while under the

23
influence of alcohol, and with an open container of an alcoholic beverage in his vehicle.  There was

24
evidence that Gonzales drove fast and recklessly.  Gonzales' lawless behavior put innocent people at

25
grave risk.  The evidence indicated that Gonzales in fact ran his vehicle into a taxi, causing it to roll,

26
killing one person and injuring three.  Gonzales' crime was morally repugnant and serious by any

17

1   measure.  The result was tragic and irreversible.  The sentence imposed on Gonzales is severe, but

2   this court cannot say that it is not grossly disproportionate to the terrible crimes he committed.

3          Gonzales has cited no United States Supreme Court precedent to support his claim

4   that his sentence violates the Eighth Amendment because it imposes consecutive sentences for a

5   single criminal act.  That portion of Ground 5 appears plainly to be without merit, and the court

6   rejects it.

7          The court will deny habeas corpus relief with respect to Ground 5.

8          <u>Ground 6</u>

9          In Ground 6, Gonzales claims that his conviction on Count 1 violates his federal

10   constitutional rights to due process of law and a fair trial, because there was insufficient evidence

11   presented at trial to support a finding that Marc Cramer, the victim named in Count 1, suffered

12   serious bodily injury.  Second Amended Petition, pp. 16-17.

13          The Nevada Supreme Court has not addressed this claim.  *See* Order Dismissing

14   Appeal, Exhibit 48, p. 7, footnote 2 ("Gonzales has not raised on appeal the viability of the

15   conviction based upon the nature of the injuries sustained by the driver of the Blazer.").  Because

16   there is no state-court ruling on this claim, there is no deference under the AEDPA.  Accordingly,

17   this court resolves Ground 6 de novo.  *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Reynoso*

18   *v. Giurbino,* 462 F.3d 1099, 1109 (9th Cir.2006); *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68

19   (9th Cir.2002).

20          When a habeas petitioner challenges the sufficiency of evidence to support a

21   conviction, the court reviews the record to determine "whether, after viewing the evidence in the

22   light most favorable to the prosecution, any rational trier of fact could have found the essential

23   elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979);

24   *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The court must assume that the jury resolved any

25   evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*,

26   443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc). *Jackson* presents "a

1   high standard" to habeas petitioners claiming insufficiency of evidence.  *Jones*, 207 F.3d at 563.

2           In resolving a claim of insufficiency of evidence, the court looks to state law to

3   determine the elements of the offense at issue.  *Jackson*, 443 U.S. at 324 n.16.

4           Gonzales' convictions on each of four counts of violation of NRS 484.3795 required

5   a showing that the victim was killed or suffered "substantial bodily harm."  NRS 484.3795.  Under

6   Nevada law, for purposes of NRS 484.3795, "substantial bodily harm" means "bodily injury which

7   creates a substantial risk of death or which causes serious, permanent disfigurement or protracted

8   loss or impairment of the function of any bodily member or organ," or "prolonged physical pain."

9   *Gibson v. State,* 95 Nev. 99, 100, 590 P.2d 158 (1979); *see also* NRS 0.060.  The jury at Gonzales'

10  trial was so instructed.  *See* Exhibit 23, Instruction 14.

11          Marc Cramer testified at trial.  *See* Exhibit 75, pp. 571-605.  Cramer described the

12  events leading up to the collision, and the collision itself.  *Id*. at 571-77.  Cramer testified that he

13  believes that, following the collision, he lost consciousness for a time.  *Id*. at 601.  He testified that,

14  after the collision, he was put in a neck brace, given an IV, and transported to a hospital trauma

15  center.  *Id*. at 579.

16          Cramer testified that after the collision his right ankle swelled up to about four times

17  its normal size, was purple, and was throbbing.  *Id*. at 579-80.  He wore a cast on the ankle for three

18  weeks.  *Id*. at 584-85.  During that time, he could not put any weight on the ankle.  *Id*.  Cramer

19  testified that at the time of trial – over seven months after the collision  – his ankle remained stiff.

20  *Id*. at 585.

21          Dr. Fred Redfern, an orthopedic surgeon who treated Cramer, testified that Cramer's

22  ankle was severely sprained.  Exhibit 75, pp. 548-51.  He testified that it was a Grade III sprain, the

23  most severe sort, involving completely torn ligaments, with severe swelling an bruising.  *Id*. at 548.

24  Dr. Redfern testified that it can take from six weeks to three months for a Grade III sprain to heal

25  as well as it will, and that, commonly, such a sprain will never heal completely.  *Id*. at 550-51.

26  Dr. Redfern testified that there are commonly residual side effects from a Grade III sprain.  *Id*.

Dr. Redern testified that, in Cramer's case, there would be permanent stiffness and loss of motion. *Id.* at 552-55.  He testified that Cramer might eventually need ligament reconstruction surgery.  *Id*. at 565-66.

Cramer also testified that his lower left rib cage and upper right torso were extremely sore after the collision.  Exhibit 75, p. 580 ("like somebody had taken a sledge hammer and beat on my chest").  He testified that his rib cage remained sore for about five months.  *Id*. at 586.  Dr. Redfern testified that Cramer suffered six rib fractures, which were treated by another doctor.  *Id*. at 560-62.

Cramer also testified that his hips were numb after the collision.  Exhibit 75, p. 580-81.  He testified that, at the time of the trial, his left hip was still numb.  *Id*. at 580-81, 587.  Cramer testified that , at the time of trial, his right hip was still stiff.  *Id*. at 587-88.

Cramer also testified that following the collision – and continuing at the time of trial – he had difficulty breathing.  Exhibit 75, pp. 581-84.

Dr. Redfern testified that he kept Cramer off work until January 25, 1997, a period of over three weeks after the collision.  Exhibit 75, p. 567.

In light of the evidence presented at trial, the court concludes that there was ample evidence at trial to support the jury's finding that Cramer suffered substantial bodily harm --  bodily injury causing serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ, or prolonged physical pain.  The court will, therefore, deny habeas corpus relief with respect to Ground 6.

Ground 7

In Ground 7, Gonzales claims that he was denied effective assistance of his trial counsel, in violation of his rights under the United States Constitution.  Second Amended Petition, pp. 17–19.  There are two parts of Ground 7, denominated Grounds 7a and 7b.

The claims in Ground 7 have not been addressed by the Nevada Supreme Court.  Because there is no state-court ruling, there is no deference under the AEDPA.  Accordingly, the

1   court resolves Grounds 7a and 7b de novo.  *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005);

2   *Reynoso v. Giurbino,* 462 F.3d 1099, 1109 (9th Cir.2006); *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68

3   (9th Cir.2002).

4          In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the

5   standards by which claims of ineffective counsel are to be measured.  In *Strickland*, the Court

6   propounded a two prong test; a petitioner claiming ineffective assistance of counsel must

7   demonstrate (1) that the attorney's representation "fell below an objective standard of

8   reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that

9   "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

10  proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694.

11         The *Strickland* Court instructed that review of an attorney's performance must be

12  "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in

13  order to avoid the "distorting effects of hindsight."  *Id.* at 689.  A reviewing court must "indulge a

14  strong presumption that counsel's conduct falls within the wide range of reasonable professional

15  assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action

16  might be considered sound trial strategy."  *Id.* (citation omitted).

17         In order to satisfy *Strickland's* second prong, the defendant must show that the

18  attorney's sub-par performance prejudiced the defense.  *Id.* at 691-92.  The test is whether there is a

19  reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in

20  question would have been different.  *Id.* at 691-94.  The Court defined reasonable probability as "a

21  probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

22         In Ground 7a, Gonzales claims that his trial counsel was ineffective for failing to

23  present "cogent testimony and argument" regarding the proximate cause element of the charged

24  offenses.  Second Amended Petition, p. 17.  With respect to this claim, Gonzales does not adequately

25  specify what testimony and argument he believes should have been presented.  Gonzales' brief,

26  general description of his attorney's alleged shortcomings, in this claim, is inadequate to allow the

court to measure counsel's performance against the applicable standard of care, and is inadequate to allow analysis of any resulting prejudice to the defense.  Certainly, Gonzales has not established unconstitutional ineffective assistance of counsel.  The court will deny habeas corpus relief with respect to Ground 7a.

In Ground 7b, Gonzales claims that his trial counsel was ineffective for not objecting to the jury instructions given by the court regarding proximate cause and contributory negligence. Second Amended Petition, p. 18.  However, as is discussed above, in connection with Ground 4, those instructions were not erroneous.  Counsel was not ineffective for failing to object to accurate jury instructions.  The court will deny habeas corpus relief with respect to Ground 7b.

Ground 8

In Ground 8, Gonzales claims that, in violation of his federal constitutional rights, he received ineffective assistance of counsel after trial, in conjunction with his sentencing, and on appeal.  Second Amended Petition, pp. 19-23.  There are seven separate parts of Ground 8, denominated Grounds 8a, 8b, 8c, 8d, 8e, 8f, and 8g.

The claims in Ground 8 have not been addressed by the Nevada Supreme Court. Because there is no state-court ruling, there is no deference under the AEDPA.  Accordingly, the court resolves Grounds 8a, 8b, 8c, 8d, 8e, 8f, and 8g de novo.  *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Reynoso v. Giurbino,* 462 F.3d 1099, 1109 (9th Cir.2006); *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir.2002).

In Ground 8a, Gonzales claims that his counsel was ineffective for failing to file a sentencing memorandum prior to sentencing.  Second Amended Petition, p. 19.  Gonzales claims that his counsel should have filed a sentencing memorandum addressing United States Supreme Court precedent "which establishes a presumption against consecutive sentences when the counts of conviction all arise from a single act."  Second Amended Petition, p. 19.  But Gonzales cites no authority that would have allowed his counsel to argue that federal law precluded consecutive sentences in this case.  The two cases cited by Gonzales, *Whalen v. United States*, 445 U.S. 684

1   (1980) and *United States v. Edick*, 603 F.2d 772 (9th Cir.1979), are inapposite.  Both of those

2   decisions turned on statutory construction.  Both were decided based on the law of other jurisdictions

3   (*Whalen* under Washington D.C. law, and *Edick* under federal law).  Both involved criminal statutes

4   nothing like the DUI statute applied in this case.  Gonzales makes no showing that his counsel erred

5   in not asserting that there is a federal constitutional presumption against consecutive sentences for

6   counts arising from a single act.[6]  The court will deny habeas corpus relief with respect to Ground 8a.

7          In Ground 8b, Gonzales claims that his counsel was ineffective for failing to object

8   to inaccurate material in the presentence investigation report.  Second Amended Petition, pp. 19-20.

9   Gonzales offers little explanation for this claim, stating only:

10          At sentencing, counsel for Mr. Gonzales informed the court that the
         report contained convictions that were not incurred by the Petitioner and then
11       requested a continuance to verify the information.  *See* Sentencing Transcript,
         pp. 18-21 (Ex. 81).

12          At no time prior to sentencing did counsel for Mr. Gonzales contact
13       the Nevada Department of Probation and Parole in order to correct the
         inaccurate information before its exposure to the sentencing judge.  Nor did
14       counsel otherwise attempt to correct the highly prejudicial mistakes prior to
         the time of sentencing.

15

16   Second Amended Petition, p. 20, lines 3-9.

17          A reading of the transcript of the sentencing discloses that Gonzales' counsel did, in

18   fact, inform the court that certain misdemeanor convictions  were incorrectly listed in the

19   presentence investigation report; counsel informed the court that those convictions were actually

20   incurred by Gonzales' brother.  *See* Exhibit 81, pp. 18-19.  In addition, Gonzales' counsel informed

21   the court that the presentence investigation report incorrectly listed a prior DUI conviction as a

22   felony, when in fact it was a misdemeanor.  *See id.* at 19-20.  It is plain that the judge understood that

23   the prior DUI conviction was a misdemeanor.  *See id.* at 23-24.  Furthermore, the judge recognized

24   _____

25          [6] Gonzales also argues that his counsel should have presented mitigating evidence by means of
     a sentencing memorandum.  However, Gonzales does not describe any mitigating evidence that his
26   counsel could have so presented, beyond that described in his claim in Ground 8d.  As is discussed with
     regard to Ground 8d, below, the court concludes that Gonzales cannot show prejudice from his counsel's
     failure to present the mitigating evidence described in Ground 8d.

that counsel had made other corrections.  *See id*. at p. 24, lines 4-5.  There is no indication that the
trial judge relied upon any of the alleged inaccurate information in the presentence investigation
report.  *See id*. at pp. 23-25.

Therefore, there is no showing that Gonzales was prejudiced by his counsel's
correction of the inaccurate information at the sentencing hearing instead of doing so earlier, or in a
written pleading.  The court will deny habeas corpus relief with respect to Ground 8b.

In Ground 8c, Gonzales claims that his counsel was ineffective for failing to submit to
the sentencing court "then existing United States Supreme Court precedent which cast serious doubt
on the legality of imposing consecutive sentences."  Second Amended Petition, p. 20.
As explanation for this claim, Gonzales incorporates by reference his argument in Ground 5.  *Id*.
As the court states in the discussion of Ground 5, above, Gonzales cites no United States Supreme
Court precedent supporting his claim that his sentence violates the Eighth Amendment because it
imposes consecutive sentences for a single criminal act.  The claim in Ground 8c is without merit,
and the court will deny habeas corpus relief with respect to it.

In Ground 8d, Gonzales claims that his counsel was ineffective for failing to submit
any substantial mitigating evidence at sentencing.  Second Amended Petition, pp. 20-21.
Gonzales claims that his counsel should have called his mother to testify at the sentencing, asserting
that she "could have testified in a manner which would have served to humanize" him.  *Id*. at 20.
Gonzales provides no specifics as to what his mother would have said in her testimony.  Gonazales
also states that other friends and family should have been called to testify on his behalf, but he does
not indicate who exactly those friends and family are, and he does not specify how they would have
testified.  *Id*.  Gonzales states that his trial counsel "failed to present any evidence regarding the
nature of the accident and the unique factors attendant to that accident."  *Id*.  Gonzales refers the
court to his allegations in Ground 4, presumably to the allegations that one or more of the victims
was not wearing seatbelts, and that the SUV involved in the accident was prone to rollover accidents.
*Id*. at 20-21.  Finally, Gonzales asserts that his counsel should have demanded that the sentencing

court "follow the prescriptions of Nev. Rev. Stat. 484.3796 and have Mr. Gonzales evaluated prior to sentencing in order to determine whether or not he could be successfully treated for alcohol addiction." *Id* at 21.  Given the generally unspecific nature of Gonzales' claims in Ground 8d, and in light of the record, particularly the transcript of the sentencing (Exhibit 81), the court concludes that there is no reasonable probability that, had counsel presented the sort of mitigation evidence suggested by Gonzales, the result of the sentencing would have been different.  The court will deny habeas corpus relief with respect to Ground 8d.

In Ground 8e, Gonzales claims that his counsel was ineffective for failing to prepare him for allocution.  Second Amended Petition, p. 21.  He states that his counsel should have spent time with him prior to the sentencing "so that a meaningful statement of contrition could have been fashioned." *Id*.

Gonzales did, in fact, speak at his sentencing.  He stated:

> I – I – I just like to – to say I'm really, really sorry about eh four individuals that were involved in this accident, and to the degree of the accident.  But uhm, your Honor, I wasn't involved.  And that's all I'd like to say.

Exhibit 81, p. 16, lines 8-12.  While Gonzales' statement was not articulate, and while it may not have had the effect he now desires, there is no indication in the record that it misrepresented his position.  It did include a statement of contrition.  Gonzales does not specify how exactly his statement might have been different if he had been better prepared by his counsel.  There is no showing that Gonzales was prejudiced by any failure on the part of his counsel to properly prepare him for allocution.[7]  The court will deny habeas corpus relief with respect to Ground 8e.

In Ground 8f, Gonzales claims that his counsel was ineffective, on appeal, for failing to argue to the Nevada Supreme Court that there was insufficient evidence to support the jury's verdict that the victim in Count 1, Marc Cramer, suffered significant bodily injury.  Second

---

[7]  The court considers, cumulatively, the effect of the attorney error alleged in Grounds 8a, 8b, 8d, and 8e, and concludes that, whether the alleged attorney error is considered individually or cumulatively, petitioner was not prejudiced by the attorney error alleged in those claims.

Amended Petition, pp. 21-22. As is discussed with regard to Ground 6, above, this court concludes, applying the standard mandated by *Jackson v. Virginia*, 443 U.S. 307 (1979), that there was ample evidence at trial to support the jury's finding that Cramer suffered substantial bodily harm. Gonzales' appellate counsel was not ineffective for failing to present a meritless argument. The court will, therefore, deny habeas corpus relief with respect to Ground 8f.

In Ground 8g, Gonzales claims that his appellate counsel was ineffective for failing to argue to the Nevada Supreme Court that the jury instructions regarding proximate cause and contributory negligence were improper. Second Amended Petition, pp. 22-23. As is discussed with regard to Ground 4, above, this court concludes that the jury instructions given at Gonzales' trial concerning proximate cause and contributory negligence were not erroneous. Gonzales' appellate counsel was not ineffective for failing to present a meritless argument. The court will, therefore, deny habeas corpus relief with respect to Ground 8g.

Request for Evidentiary Hearing

Gonzales requests an evidentiary hearing. *See* Reply (docket #42), p. 28. However, Gonzales does not cite to, much less set forth any analysis under, 28 U.S.C. § 2254(e)(2), the statutory provision governing the availability of evidentiary hearings in federal habeas corpus actions.

Gonzales' request for an evidentiary hearing is wholly conclusory. Gonzales does not specify what factual issues merit an evidentiary hearing, he does not give any indication what evidence he would offer at an evidentiary hearing, and he does not describe his efforts to present the evidence in state court.

The court finds that Gonzales has not shown an evidentiary hearing to be warranted under 28 U.S.C. § 2254(e)(2).

Certificate of Appealability

To appeal from this order, and the resulting judgment, Gonzales must obtain a certificate of appealability from either this court or the court of appeals. *See* 28 U.S.C. § 2253(c).

1    The standard for issuance of a certificate of appealability calls for a "substantial

2 showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  The Supreme Court has

3 interpreted 28 U.S.C. § 2253(c) as follows:

4    Where a district court has rejected the constitutional claims on
the merits, the showing required to satisfy §2253(c) is straightforward:

5    The petitioner must demonstrate that reasonable jurists would find the
district court's assessment of the constitutional claims debatable or

6    wrong.  The issue becomes somewhat more complicated where, as
here, the district court dismisses the petition based on procedural

7    grounds.  We hold as follows: When the district court denies a habeas
petition on procedural grounds without reaching the prisoner's

8    underlying constitutional claim, a COA should issue when the prisoner
shows, at least, that jurists of reason would find it debatable whether

9    the petition states a valid claim of the denial of a constitutional right
and that jurists of reason would find it debatable whether the district

10    court was correct in its procedural ruling.

11 *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

12 (9th Cir. 2000).  The Supreme Court further illuminated the standard for issuance of a certificate of

13 appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  In that case, the Court stated:

14    We do not require petitioner to prove, before the issuance of a COA,
that some jurists would grant the petition for habeas corpus. Indeed, a

15    claim can be debatable even though every jurist of reason might agree,
after the COA has been granted and the case has received full

16    consideration, that petitioner will not prevail.

17 *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

18    In this case, for the reasons stated above, the court finds that Gonzales does not

19 satisfy the standard for a certificate of appealability with respect to any of the issues he has raised.

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

1    **IT IS THEREFORE ORDERED** that the Second Amended Petition for Writ of

2 Habeas Corpus (docket #2) is **DENIED**.

3    **IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT**

4 **ACCORDINGLY.**

5    **IT IS FURTHER ORDERED** that the petitioner is **DENIED A CERTIFICATE**

6 **OF APPEALABILITY.**

7

8    Dated this __22nd__ day of October, 2008.

9

10

11    UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

28